IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT WATSON, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:24-cv-2227-JPM-cgc |
| v. | ) ) ) | |
| GOLDEN NORTH VAN LINES, INC., and SERENA KRAFT, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Golden North Van Lines, Inc.'s ("Golden North's") and Serena Kraft's ("Kraft's") (collectively, "Defendants'") Motion for Summary Judgment, filed on March 7, 2025. (ECF No. 53.) For the foregoing reasons, Defendants' Motion is **DENIED**.

**I.   BACKGROUND**

On March 7, 2024, Plaintiff Robert Watson ("Plaintiff") filed his Complaint against Defendants in Shelby County Circuit Court in Shelby County, Tennessee. (ECF No. 1 at PageID 1.) The Complaint contains allegations of defamation as to Kraft, tortious interference as to Kraft, and respondeat superior liability as to Golden North. (Id. at PageID 2.) On April 11, 2024, Defendants removed the case to the Court. (Id. at PageID 1.) The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Id. at PageID 2.)

### A.    Factual Background[1]

Golden North is a corporation with its principal place of business in Alaska. (ECF No. 75 at PageID 2001.) Kraft is a resident of Alaska and an employee of Golden North. (Id.; see ECF No. 53-1 at PageID 223.)

Plaintiff was an officer and minority shareholder of Relocation Management Worldwide, Inc. ("RMW"). (ECF No. 75 at PageID 2000.) Despite his positions in RMW, Plaintiff was employed by a separate entity, RMW-CRS. (Id. at PageID 2002.) RMW is one of the companies under the umbrella of Armstrong Relocation Company ("Armstrong"). (Id. at PageID 2000–01.) There is overlap in ownership between the two companies. (ECF No. 76 at PageID 2456; ECF No. 75 at PageID 2000.) RMW's primary business is facilitating the moves of households for federal employees. (ECF No. 75 at PageID 2002.) RMW contracts with companies such as Golden North to provide the actual moving services. (Id. at PageID 2003; see ECF No. 1-1 at PageID 10.)

Since at least 2018 and through 2022, RMW had been paying "SCAC Management Fees" (the "SCAC Fees") every month. (ECF No. 76 at PageID 2464.) The SCAC Fees were paid to an entity named Universal Management Services ("Universal") for the purpose of using other companies' Standard Carrier Alpha Codes ("SCACs").[2] (Id. at PageID 2459; ECF No. 75 at PageID 2007, 2016.) The payments to Universal would then go to Plaintiff and RMW's former CEO, Bob Burke ("Burke"). (ECF No. 76 at PageID 2474.) The SCAC Fees were reported on RMW's financial statements from 2018 through 2023. (ECF No. 76 at PageID 2461.)

---

[1] This section is based on Plaintiff's and Defendants' agreement as to the undisputed facts. (See ECF Nos. 75, 76.)
[2] An SCAC is "a unique two-to-four letter coding system used to identify transportation companies." National Motor Freight Traffic Assoc., Inc., Standard Carrier Alpha Code (SCAC), https://nmfta.org/scac/ (last visited May 8, 2025). An SCAC is required to conduct business with the federal government. See Nat'l Motor Freight Traffic Assoc., Inc., So You Think You Need a SCAC, https://nmfta.org/wp-content/media/2024/04/0402-SoYouThinkYouNeedASCAC.pdf (last visited May 8, 2025).

In 2022, RMW began losing money. (ECF No. 75 at PageID 2003.) Matt Harrell ("Harrell"), Senior Vice President of Finance for Armstrong, was asked to investigate RMW's finances in the fourth quarter of 2022. (ECF No. 76 at PageID 2463.) Harrell recommended RMW stop paying the SCAC Fees. (Id.) In the fall of 2022, RMW stopped paying the SCAC Fees. (Id.) In the fall of 2022, RMW terminated Burke and promoted Plaintiff to CEO. (ECF No. 75 at PageID 2003–04.) By the winter of 2022, RMW owed over $600,000 to Golden North for unpaid moving services. (Id. at PageID 2004.)

In February 2023, Todd Watson—another RMW officer—and Steve Halvorson ("Halvorson")—Golden North's president—began discussions on how RMW would pay Golden North. (Id. at PageID 2005.) As an option for satisfaction of RMW's debt, Todd Watson suggested Golden North consider investing in or buying RMW. (Id.) Halvorson and Kraft then signed non-disclosure agreements ("NDAs") on behalf of Golden North in order to review RMW's financial records. (See id. at PageID 2006.)

On March 6, 2023, Harrell sent Kraft RMW's financial records. (ECF No. 76 at PageID 2468.) Upon review of RMW's financial records, Kraft noticed RMW had been paying the SCAC Fees to Universal. (ECF No. 75 at PageID 2007, 2016.) Kraft believed there was no legitimate purpose behind the SCAC Fees. (Id. at PageID 2008.)

On March 8, 2023, Kraft began a text exchange with Todd Watson, where she made following statements:

- "I'll tell you right now, [Plaintiff] is syphoning money from RMW. I think it's considerable. I just need to prove it which is taking time. Best thing you could do, immediately is lock [Plaintiff] out ASAP." (ECF No. 76 at PageID 2469–70.)
- "110[%] [Plaintiff] is stealing. I have zero doubt in that." (Id. at PageID 2470.)
- "Criminals, especially long term employees or family, are brazen, they are entitled." (Id.)[3]

---

[3] Kraft was referring to Plaintiff when she used the word "criminal." (ECF No. 76 at PageID 2470.)

- "[RMW has] a kickback with [RMW-]CRS 1,000 percent happening." (Id.)
- "That's part of it. The kickback. But I think there is another side." (Id.)

On March 9, 2023, Todd Watson hired the accounting firm Horne & Company ("Horne") to investigate RMW's finances for fraud. (Id. at PageID 2471.) On March 13, 2023, Armstrong and RMW had a board meeting to discuss terminating Plaintiff's employment. (Id. at PageID 2472–73.) Between March 13 and 17, 2023, Armstrong asked its in-house counsel to conduct an analysis on removing Plaintiff as a shareholder. (Id. at PageID 2473.)

Around March 27 and 28, 2023, Kraft came to Memphis to meet with the Armstrong board regarding RMW. (Id. at PageID 2476.) On March 28, 2023, Tom Watson asked Plaintiff if the SCAC Fees to Universal were then paid to Plaintiff and Burke. (Id.) Plaintiff acknowledged they were. (Id.) By March 29, 2023, RMW made the decision to terminate Plaintiff's employment. (Id. at PageID 2474.)

On March 30, 2023, Plaintiff was terminated for theft. (Id.) Horne never provided a final written report on RMW's finances. (Id. at PageID 2475.) Horne also never concluded Plaintiff committed theft or fraud. (Id.) Plaintiff has not been criminally charged for the alleged theft. (Id.)

  **B.**  **Procedural Background**

On February 7, 2025, the Parties completed discovery. (See ECF No. 44-1 at PageID 170.) On March 7, 2025, Defendants filed the instant Motion and a Statement of Undisputed Facts. (ECF Nos. 53, 54.) On April 4, 2025, Plaintiff filed his Responses to both Defendants' Motion and Statement of Undisputed Facts. (ECF Nos. 75, 75-1.) Plaintiff also filed his own Statement of Undisputed Facts. (ECF No. 75 at PageID 2028–43.) On April 17, 2025, Defendants filed their Reply in Support of their Motion and their Response to Plaintiff's Statement of Undisputed Facts. (ECF Nos. 76, 77.)

4

## II. LEGAL STANDARD

A party moving for summary judgment must identify each claim, or part of each claim, for which it seeks summary judgment. Fed. R. Civ. P. 56(a). A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

The Court must consider the cited materials and may consider materials in the record. Fed. R. Civ. P. 56(c)(3). The Court, however, need not "search the entire record to establish that it is bereft of a genuine issue of material fact." Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (internal citations omitted).

## III. ANALYSIS

Defendants argue they are entitled to summary judgment on Plaintiff's claims for defamation and tortious interference with business relations. (See ECF No. 53-1 at PageID 223.) Defendants do not contest the applicability of respondeat superior. (Id.) The Court addresses defamation and tortious interference in turn.

### A. Defamation

"To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." See Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). "The basis for an action for defamation . . . is that the defamation has resulted in an injury to the person's character and reputation." Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 820 (Tenn. 1994).

Defendants argue they are entitled to summary judgment on Plaintiff's defamation claim because (1) Kraft's statements did not cause Plaintiff's firing; (2) Plaintiff has no admissible proof because his allegations in a previous case "cancel out" his current allegations; (3) Kraft's statements were opinions; and (4) there was no publication. (See ECF No. 53-1 at PageID 223–25.) The Court addresses each argument in turn.

#### i. Causation

Defendants argue they are entitled to summary judgment on Plaintiff's claim for defamation because Plaintiff "can prove neither causation in fact nor proximate causation." (ECF No. 53-1 at PageID 227.) Plaintiff counters this argument by pointing to the timeline of his firing, in that on March 8, 2024, Kraft accused Plaintiff of theft, and on March 30, 2024, RMW terminated Plaintiff for theft. (ECF No. 75-1 at PageID 2053–54.)

The Court first considers whether causation is a requirement for a defamation claim. Defendants argue Plaintiff is required to prove causation because defamation is a tort. (See ECF No. 53-1 at PageID 227 (citing Burroughs v. Magee, 118 S.W.3d 323, 327–28 (Tenn. 2003)).) Plaintiff does not address whether his defamation claim requires causation. (Cf. ECF No. 75-1.)

It is unclear whether causation is required for a claim of defamation. Defendants' citation to Burroughs is unavailing, as the case states causation is required for negligence cases. See 118 S.W.3d at 327–328. It does not explicitly require causation for all torts, let alone defamation. Cf. id. Indeed, a defamation cause of action in Tennessee does not explicitly involve an element of causation. See Sullivan, 995 S.W.2d at 571; see also T.P.I.–CIVIL 7.02 Ordinary (Non-privileged) Defamation, 8 Tenn. Prac. Pattern Jury Instr. (2024 ed.) (no mention of causation in Tennessee's Practice Pattern Jury Instructions for defamation). In contrast, other states' laws on defamation may explicitly involve an element of causation. See, e.g. Schmalenberg v. Tacoma News, Inc., 943 P.2d 350, 361 (1997) (under Washington law, "proximate cause is an element of defamation").

At the same time, the "basis for an action for defamation . . . is that the defamation has resulted in an injury." Quality Auto, 876 S.W.2d at 820. This is similar to language from other states which the Sixth Circuit has interpreted as language of causation. See NOCO Co. v. OJ Com., LLC, 35 F.4th 475, 481 (6th Cir. 2022) (interpreting the requirement under Ohio law "that the plaintiff suffered injury as a proximate result of the publication" as a requirement that "[the plaintiff] prove that [the defendant] was the proximate cause of its injury").

In sum, the Court does not conclude whether causation is required for a defamation claim in Tennessee. If, however, causation is required, the Court finds there is a genuine dispute of material fact on the issue of causation such that summary judgment on Plaintiff's defamation claim is not appropriate. See Fed. R. Civ. P. 56(a).

Causation is generally an issue of fact for the jury. See Ayrhart v. Scruggs, No. M2003-00453-COA-R9-CV, 2004 WL 2113064, at *7 (Tenn. Ct. App. Sept. 21, 2004) (in the context of negligence, "causation is a question of fact, generally determined by the jury"); McClenahan v.

Cooley, 806 S.W.2d 767, 775 (Tenn. 1991) ("proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome"); cf. NOCO, 35 F.4th at 482 ("proximate cause is generally a question for the jury under Ohio [defamation] law").

Defendants argue Plaintiff cannot establish proximate cause as a matter of law because intervening causes broke the causal chain. (See ECF No. 53-1 at PageID 228–29 (citing NOCO, 35 F.4th at 48).) Specifically, Defendants point to "RMW/Armstrong's investigation of [Plaintiff's] conduct and the subsequent decision by RMW's Ownership Group [to terminate Plaintiff], based on the internal investigation rather than statements by . . . Kraft." (Id. at PageID 229.) Defendants argue because Kraft "is not affiliated with RMW and played no part in its investigation of [Plaintiff]," she did not cause Plaintiff's firing. (Id. at PageID 230.) Plaintiff counters the internal investigation which led to his firing was not independent, but rather was caused by Kraft's texts. (ECF No. 75-1 at PageID 2059.)

The Court finds Defendants' argument unavailing. First, NOCO is distinguishable, as it is pursuant to Ohio, not Tennessee, law. See 35 F.4th at 481. Indeed, in Tennessee, "the question of superseding intervening cause is a matter peculiarly for the jury because of foreseeability concerns." McClenahan, 806 S.W.2d at 775. NOCO is further distinguishable on its facts. See 35 F.4th at 481. There, the Sixth Circuit found a superseding cause where a third party online retailer conducted its own independent investigation in response to allegedly defamatory statements about the plaintiff, then proceeded to shut down the plaintiff's account pursuant to the investigation's results. Id. Here, however, RMW did not conduct a similarly independent investigation before firing Plaintiff. Horne, the accounting firm who conducted RMW's investigation into Plaintiff, neither issued a written report nor concluded Plaintiff

8

committed theft or fraud.  (ECF No. 76 at PageID 2475.)  Furthermore, Kraft continued to communicate with Todd Watson over the course of the investigation.  (Id. at PageID 2472–73.)  She also traveled to Memphis to meet with the Armstrong board regarding RMW before Plaintiff was terminated.  (Id. at PageID 2473.)  With reasonable inferences construed in Plaintiff's favor, the evidence regarding Kraft's involvement in the investigation and the timeline of Plaintiff's firing present a sufficient disagreement on causation to require submission to a fact finder.  See Robertson, 753 F.3d at 614; Johnson, 777 F.3d at 843.

    *ii.*  *Cancellation Rule*

"[C]ontradictory statements made by the same witness regarding a specific fact cancel each other out resulting in there being no evidence of the fact sought to be proved."  Berbaum v. Amco Ins. Co., No. 1:21-cv-01004-STA-jay, 2022 WL 627035, at *7 (W.D. Tenn. Mar. 3, 2022) (citing Church v. Perales, 39 S.W.3d 149, 169–70 (Tenn. Ct. App. 2000)).  "However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence."  Perales, 39 S.W.3d at 170.  "When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion."  Id.

  Here, Plaintiff alleges and testifies Kraft's actions caused his termination and loss of value in his RMW stock.  (ECF No. 1-1 ¶ 44; see ECF No. 75 at PageID 2021.)  In a previous state court litigation, Relocation Management Worldwide Inc. v. Robert J Burke, Case No. CH-23-0589 (Shelby Cty. Ch. Ct., 2023.) (the "RMW State Litigation"), Plaintiff alleged the other owners of RMW fired him to take Plaintiff's shares.  (See ECF No. 75-1 at PageID 2054–55.)

9

Defendants argue the cancellation rule applies because Plaintiff's testimony here contradicts his allegations in the RMW State Litigation. (ECF No. 53-1 at PageID 232.) Plaintiff counters the cancellation rule does not apply because Plaintiff was unaware of Kraft's statements at the time Plaintiff made his allegations in the RMW State Litigation. (See ECF No. 75-1 at PageID 2054–55.)

The Court finds Defendants' argument unavailing. Viewing Plaintiff's statements in the light most favorable to him, the allegedly contradictory statements are explainable such that the cancellation rule does not apply. See Perales, 39 S.W.3d at 170. Specifically, Plaintiff was unaware of Kraft's alleged role in the firing when he made his allegations in the RMW State Litigation. (See ECF No. 75-1 at PageID 2055 (citing ECF No. 75 at PageID 2025).) Plaintiff's allegations in the RMW State Litigation make no mention of Kraft's communications. (Cf. id.) Indeed, Plaintiff only obtained Kraft's statements through the discovery process in the RMW State Litigation. (See ECF No. 18 at PageID 101; see also ECF No. 18 at PageID 101.) Plaintiff's statements regarding his firing thus do not present an "unequivocal and irreconcilable conflict" such that the cancellation rule applies. Rochelle v. Grange Mut. Cas. Co., No. M2011-02697-COA-R3-CV, 2012 WL 3104901, at *7 (Tenn. Ct. App. July 31, 2012) (quoting Helderman v. Smolin, 179 S.W.3d 493, 507 (Tenn. Ct. App. 2005)). Rather, Plaintiff's statements amount to a "product of misunderstanding" such that the cancellation rule does not apply. See Tenn. Farmers Mut. Ins. Co. v. Simmons, No. E2020-00791-COA-R3-CV, 2021 WL 4164445, at *6 (Tenn. Ct. App. Sept. 14, 2021) (quoting Rochelle, 2012 WL 3104901, at *7)).

    *iii.*    *Opinions*

"[S]tatements of opinion are only actionable [for defamation] if they imply the allegation of undisclosed defamatory facts as the basis for the opinion." Satterfield v. Bluhm, No. E2003-

10

01609-COA-R3-CV, 2004 WL 833291, at *5 (Tenn. Ct. App. Apr. 16, 2004) (citing <u>Old Dominion Branch No. 496 v. Austin</u>, 418 U.S. 264 (1974); <u>Stones River Motors, Inc. v. Mid-South Pub. Co.</u>, 651 S.W.2d 713, 716 (Tenn. Ct. App. 1983)).

Defendants argue Kraft's statements about Plaintiff were her opinions, and thus not actionable, because they were rooted in a review of RMW's financial records. (ECF No. 53-1 at PageID 233.) In support, Defendants point to Todd Watson's deposition, as he indicated he understood Kraft to be expressing her opinion. (<u>See</u> ECF No. 75 at PageID 2010.) Plaintiff argues Kraft's statements are actionable because they are rooted in an alleged factual basis. (ECF No. 75-1 at PageID 2049.)

The Court finds Defendants' argument unavailing. At a minimum, there is a genuine dispute of material fact as to whether Kraft's statements are rooted in an alleged factual basis. RMW gave Kraft access to its financial records. (<u>See</u> ECF No. 75 at PageID 2006.) Shortly thereafter, Kraft texted Todd Watson, "110[%] [Plaintiff] is stealing. I have zero doubt in that." (ECF No. 76 at PageID 2470.) Kraft also texted Todd Watson, "[RMW] have a kickback with [RMW-]CRS 1,000 percent happening." (<u>Id.</u>) In the light most favorable to Plaintiff, a reasonable reader could assume when Kraft made these statements, she had facts to support them, given she had access to RMW's finances. <u>See</u> <u>Joyce v. Thompson Wigdor & Gilly LLP</u>, No. 06 CIV. 15315 RLC-gwg, 2008 WL 2329227, at *11 (S.D.N.Y. June 3, 2008) (finding a reasonable reader would assume an allegedly defamatory statement was rooted in fact where the entity who made the statement had direct knowledge of possible facts behind the statement); <u>see also</u> <u>Milkovich v. Lorain J. Co.</u>, 497 U.S. 1, 18, (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth."). Because a reasonable reader could consider Kraft's statements to be rooted in a

11

factual basis, there is a genuine dispute as to whether her statements are actionable such that summary judgment is inappropriate. See Satterfield, 2004 WL 833291, at *5.

> iv.   *Publication*

Publication is a required element of a defamation claim. Sullivan, 995 S.W.2d at 571. "'Publication' is a term of art meaning the communication of defamatory matter to a third person." Id. (citing Quality Auto, 876 S.W.2d at 820). Defendants argue Kraft's statements to Todd Watson were not publications because Todd Watson was a "business associate with a 'need to know'" Kraft's statements. (See ECF No. 53-1 at PageID 234–35 (citing Woods v. Helmi, 758 S.W.2d 219, 223 (Tenn. Ct. App. 1988)). Plaintiff counters that Defendants' argument is the same common interest privilege the Court has already rejected. (See ECF No. 75-1 at PageID 2050–51 (citing ECF No. 46).)

The Court finds Defendants' arguments unavailing. Kraft gained access to RMW's records for the primary purpose of satisfying RMW's debt to Golden North. (See ECF No. 76 at PageID 2467.) Her connection to RMW consisted of an NDA to review RMW's record. (See id. at PageID 2466–67.) The NDA did not establish a "chain of command" such that Todd Watson "need[ed] to know" any communication from Kraft. See Woods, 758 S.W.2d at 223. Kraft did not make her allegedly defamatory statements "within the scope and course of [any] employment relative to duties performed for [RMW]." See id. Rather, Kraft communicated her allegedly defamatory statements to a distinct entity, which can establish the element of publication. See Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 163 (Tenn. Ct. App. 1997) ("the publication of the defamatory material . . . made to separate entities . . . establishes the element of publication").

Woods, 758 S.W.2d 219, is a useful contrast. In Woods, there was a "practical and legal necessity" for the plaintiff's supervisor to report the performance of its independent contractor

12

staff—of which the plaintiff was a part—to an accredited hospital because of contractual, hospital rule, and state law connections between the two separate entities. Id. at 224. Because there was an "interest in and responsibility for the performance" of the corporate party, the Woods court found there to be no publication, and thus no defamation. Id.

Here, however, there is nowhere near the level of connection as in Woods. Kraft had no "practical or legal necessity" to report her findings to Todd Watson; rather, she reviewed RMW's finances so Golden North could be paid. See id. at 224; (ECF No. 76 at PageID 2467.) Because Kraft and RMW lack this close relationship, Todd Watson was not a "business associate with a 'need to know' [designation]." (See ECF No. 53-1 at PageID 545.) Accordingly, Defendants cannot demonstrate the publication element is lacking. See Myers, 959 S.W.2d 163.

Because Defendant cannot demonstrate Todd Watson was a "business associate with a 'need to know'" Kraft's statements, (see ECF No. 53-1 at PageID 234–35), summary judgment is not appropriate on Plaintiff's defamation claim.

Furthermore, because Defendants do not challenge the other elements of defamation, the Court does not reach them.

### B. Tortious Interference with Contractual Relations

The tort of intentional interference with business relationship consists of five elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means [. . .]; and finally, (5) damages resulting from the tortious interference.

Sony/ATV Music Pub'g LLC v. D.J. Miller Music Distribs., Inc., No. 3:09-cv-01098, 2011 WL 4729811, at *7–8 (M.D. Tenn. Oct. 7, 2011) (quoting Trau–Med of Am., Inc., v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002)).

13

The first and second elements are not disputed. (See ECF No. 53-1 at PageID 236.) Regarding the remaining elements, Defendants argue Plaintiff cannot succeed on his claim of tortious interference because Plaintiff has (1) no evidence of causation; and (2) no evidence of "improper motive or means." (Id. at PageID 237.) Plaintiff argues he has sufficient evidence to establish his prima facie case. (See ECF No. 75-1 at PageID 2061.)

Here, the Court finds Defendants are not entitled to summary judgment on the claim of tortious interference with contractual relations. Their arguments as to causation and improper motive or means are unavailing. (See ECF No. 53-1 at PageID 237.)

First, like in defamation, causation is not an explicit element of tortious interference. Cf. Trau-Med, 71 S.W.2d at 701. And like in defamation, it is unclear whether causation is required for tortious interference. See supra Section III.A.i. Regardless, summary judgment as to causation is inappropriate because (1) causation is generally a question of fact for the jury; and (2) with reasonable inferences in Plaintiff's favor, Kraft's involvement in the investigation and the timeline of Plaintiff's firing create a genuine dispute of material fact. See id.

Second, regarding element four, Plaintiff may prove improper means via defamation. See Trau-Med, 71 S.W.3d at 701 (defamation is "an example of improper interference"). Because Defendants have not demonstrated they are entitled to summary judgment on Plaintiff's claim of defamation, Plaintiff may prove this element by proving his case for defamation. Supra Section III.A.iv; Trau-Med, 71 S.W.3d at 701. Accordingly, there is a genuine dispute of material fact as to this element such that Defendants are not entitled to summary judgment. See Fed. R. Civ. P. 56(a).

Defendants also argue Plaintiff must choose which claim—defamation or tortious interference—to pursue under the doctrine of election of remedies. (ECF No. 53-1 at PageID

236 n.1.)  Plaintiff does not address this argument in his Response.  (Cf. ECF No. 75-1.)  Nevertheless, the Court finds Defendants' argument unavailing.  "The doctrine of election of remedies is implicated when two inconsistent and irreconcilable remedies are available to the plaintiff to redress a single wrongful act."  Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 906 (Tenn. 1999).  Here, Plaintiff seeks monetary damages for two alleged wrongs: defamation and tortious interference.  (See ECF No. 1-1 at PageID 21.)  These are not "irreconcilable remedies . . . [for] a single wrongful act."  See id.[4]  Thus, Plaintiff does not need to choose a specific claim to pursue.

IV.     **CONCLUSION**

For the reasons discussed above, Defendants' Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this the 16th day of May, 2025.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE

---

[4] As an example, the doctrine of election of remedies would apply if Plaintiff sought both monetary damages and reinstatement of his position, as those would be inconsistent remedies which negate one another.  See Hoback v. City of Chattanooga, 492 S.W.3d 248, 261 (Tenn. Ct. App. 2015) (finding the doctrine of election of remedies to apply where the plaintiff chose to pursue the remedy of front pay, rather than reinstatement, in a wrongful termination case).