IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROBERT WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:24-cv-2227-JPM-cgc |
| ) | |
| v. ) | |
| ) | |
| GOLDEN NORTH VAN LINES, INC., and ) | |
| SERENA KRAFT ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR NEW TRIAL**

Before the Court is Defendants Golden North Van Lines, Inc. ("Golden North") and Serena Kraft's ("Kraft's") (collectively, "Defendants'") Renewed Motion for Judgment as a Matter of Law or in the Alternative for New Trial, filed on July 11, 2025. (ECF No. 137.) For the reasons stated below, Defendants' Motion is **DENIED**.

**I.    BACKGROUND**

On March 7, 2024, Plaintiff Robert Watson ("Plaintiff") filed his Complaint against Defendants in Shelby County, Tennessee. (ECF No. 1 at PageID 1.) The Complaint contains allegations of defamation as to Kraft, tortious interference as to Kraft, and respondeat superior liability as to Golden North. (Id. at PageID 2.) On April 11, 2024, Defendants removed the case to this Court. (Id. at PageID 1.)

Plaintiff is citizen of Kentucky. (ECF No. 1-1 at PageID 9.) Golden North is a corporation with its principal place of business in Alaska. (ECF No. 75 at PageID 2001; ECF No. 1-1 at

PageID 9.) Kraft is a resident of Alaska and an employee of Golden North. (Id.; see ECF No. 53-1 at PageID 223.) The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Id. at PageID 2.)

### A.    Factual Background[1]

Plaintiff was an officer and minority shareholder of Relocation Management Worldwide, Inc. ("RMW"). (ECF No. 75 at PageID 2000.) Despite his positions in RMW, Plaintiff was employed by a separate entity, RMW-CRS. (Id. at PageID 2002.) RMW is one of the companies under the umbrella of Armstrong Relocation Company ("Armstrong"). (Id. at PageID 2000–01.) There is overlap in ownership between the two companies. (ECF No. 76 at PageID 2456; ECF No. 75 at PageID 2000.) RMW's primary business is facilitating the moves of households for federal employees. (ECF No. 75 at PageID 2002.) RMW contracts with companies such as Golden North to provide the actual moving services. (Id. at PageID 2003; see ECF No. 1-1 at PageID 10.)

From at least 2018 through 2022, RMW was paying monthly "SCAC Management Fees" (the "SCAC Fees") to an entity named Universal Management Services ("Universal") for the purpose of using other companies' Standard Carrier Alpha Codes ("SCACs").[2] (Id. at PageID 2459, 2464; ECF No. 75 at PageID 2007, 2016.) The SCAC Fees to Universal would then go to Plaintiff and RMW's former CEO, Bob Burke ("Burke"). (ECF No. 76 at PageID 2474.) The SCAC Fees were reported on RMW's financial statements from 2018 through 2023. (Id. at PageID 2461.)

---

[1] This Section is adapted from the Court's Order Denying Summary Judgment. (See ECF No. 82.)
[2] An SCAC is "a unique two-to-four letter coding system used to identify transportation companies." Nat'l Motor Freight Traffic Assoc., Inc., Standard Carrier Alpha Code (SCAC), https://nmfta.org/scac/ (last visited May 8, 2025). An SCAC is required to conduct business with the federal government. See Nat'l Motor Freight Traffic Assoc., Inc., So You Think You Need a SCAC, https://nmfta.org/wp-content/media/2024/04/0402-SoYouThinkYouNeedASCAC.pdf (last visited May 8, 2025).

In 2022, RMW began losing money. (ECF No. 75 at PageID 2003.) Matt Harrell ("Harrell"), Senior Vice President of Finance for Armstrong, was asked to investigate RMW's finances in the fourth quarter of 2022. (ECF No. 76 at PageID 2463.) Harrell recommended RMW stop paying the SCAC Fees. (Id.) In the fall of 2022, RMW stopped paying the SCAC Fees. (Id.) RMW also terminated Burke and promoted Plaintiff to CEO. (ECF No. 75 at PageID 2003–04.) By the winter of 2022, RMW owed over $600,000 to Golden North for unpaid moving services. (Id. at PageID 2004.)

In February 2023, Todd Watson—another RMW officer—and Steve Halvorson ("Halvorson")—Golden North's president—began discussing how RMW would pay its debt to Golden North. (Id. at PageID 2005.) As an option for satisfaction of RMW's debt, Todd Watson suggested Golden North consider investing in or buying RMW. (Id.) Halvorson and Kraft then signed non-disclosure agreements ("NDAs") on behalf of Golden North in order to review RMW's financial records. (See id. at PageID 2006.)

On March 6, 2023, Harrell sent Kraft RMW's financial records. (ECF No. 76 at PageID 2468.) Upon review of RMW's financial records, Kraft noticed RMW had been paying the SCAC Fees to Universal. (ECF No. 75 at PageID 2007, 2016.) Kraft believed there was no legitimate purpose behind the SCAC Fees. (Id. at PageID 2008.)

On March 8, 2023, Kraft began a text exchange with Todd Watson, where she made the following statements:

- "I'll tell you right now, [Plaintiff] is syphoning money from RMW. I think it's considerable. I just need to prove it which is taking time. Best thing you could do, immediately is lock [Plaintiff] out ASAP." (ECF No. 76 at PageID 2469–70.)
- "110[%] [Plaintiff] is stealing. I have zero doubt in that." (Id. at PageID 2470.)
- "Criminals, especially long term employees or family, are brazen, they are entitled." (Id.)[3]

---

[3] Kraft was referring to Plaintiff when she used the word "criminal." (ECF No. 76 at PageID 2470.)

3

- "[RMW has] a kickback with [RMW-]CRS 1,000 percent happening." (Id.)
- "That's part of it. The kickback. But I think there is another side." (Id.)

On March 9, 2023, Todd Watson hired the accounting firm Horne & Company ("Horne") to investigate RMW's finances for fraud. (Id. at PageID 2471.) On March 13, 2023, Armstrong and RMW had a board meeting to discuss terminating Plaintiff's employment. (Id. at PageID 2472–73.) Between March 13 and 17, 2023, Armstrong asked its in-house counsel to conduct an analysis on removing Plaintiff as a shareholder. (Id. at PageID 2473.)

Around March 27 or 28, 2023, Kraft came to Memphis, Tennessee, to meet with the Armstrong board regarding RMW. (Id. at PageID 2476.) On March 28, 2023, Tom Watson asked Plaintiff if the SCAC Fees to Universal were then paid to Plaintiff and Burke. (Id.) Plaintiff acknowledged they were. (Id.) By March 29, 2023, RMW made the decision to terminate Plaintiff's employment. (Id. at PageID 2474.)

On March 30, 2023, Plaintiff was terminated for theft. (Id.) Horne never provided a final written report on RMW's finances. (Id. at PageID 2475.) Horne also never concluded that Plaintiff committed theft or fraud. (Id.) Plaintiff has not been criminally charged for the alleged theft. (Id.)

### B.   Procedural Background

On March 7, 2025, Defendants filed a motion for summary judgment, arguing they are entitled to judgment as a matter of law because (1) Plaintiff cannot prove causation; (2) Plaintiff contradicted himself under oath; (3) Kraft's statements were only her opinions; (4) Plaintiff cannot satisfy the publication element under defamation; and (5) Plaintiff cannot satisfy the improper motive element under tortious interference . (ECF No. 53-1 at PageID 224–25.) On May 16, 2025, the Court denied Defendants' motion for summary judgment in full. (ECF No. 82.)

As the Parties approached trial, they filed multiple pretrial filings, including motions in limine, proposed voir dire, proposed jury instructions, a joint proposed pretrial order, and a motion

4

to bifurcate. (ECF Nos. 78–80 (Defs.' Mots. in Lim. 1–3), 85 (Pl.'s Mot. in Lim. 1), 86 (Defs.' Mot. in Lim. 4), 87 (Defs.' Mot. to Bifurcate), 88 (Pl.'s Mot. in Lim. 2), 89 (Defs.' Proposed Voir Dire), 90 (Defs.' Proposed Jury Instructions), 91 (Pl.'s Proposed Jury Instrs.), 92 (Defs.' Proposed Voir Dire), 93 (Parties' Proposed Pretrial Order).) As part of their filings, the Parties agreed on a set of stipulated facts. (ECF No. 93 at PageID 2652–55.)

The Court bifurcated a possible punitive damages phase of trial in accordance with Tennessee law. (ECF No. 96 at PageID 2677–78 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992)).) The Court granted Plaintiff's motions in limine, granted Defendants' Motion in Limine 1, and denied Defendants' other motions in limine. (ECF No. 100 at PageID 2692.)

On June 3, 2025, the Court held a final Pretrial Conference. (See ECF No. 101 (Min. Entry).) On June 5, 2025, the Court entered the final Pretrial Order. (ECF No. 102.)

On June 9, 2025, the first phase of trial began. (See ECF No. 105 (Min. Entry).) The Court entered as an exhibit and docketed Parties' First Stipulation of Facts. (See ECF No. 108.) On June 11, 2025, at the close of proof, Defendants moved for judgment as a matter of law. (ECF No. 130 at PageID 2702:19–20.) In support, Defendants argued there was "no causation for either of the torts . . . nor any causation for damages." (Id. at PageID 2702:20–22.) After hearing argument from counsel, the Court denied Defendants' motion. (Id. at PageID 3713:5–21.) The next day, the jury began deliberations. (ECF No. 131 at PageID 3798:21–23.)

During deliberations, the jury submitted three questions, to which the Court gave three supplemental jury instructions. (See ECF Nos. 114–116.) On June 13, 2025, the jury returned a verdict that:

- Defendants Serena Kraft/Golden North Van Lines, Inc. defamed Plaintiff Robert "Al" Watson.

5

- Defendants Serena Kraft/Golden North Van Lines, Inc. did not tortiously interfere with Plaintiff Robert "Al" Watson's business relationship with Relocation Management Worldwide, Inc.
- The total amount of compensatory damages sustained by Plaintiff as a result of Defendants' actions was $450,000.
- Defendants Serena Kraft/Golden North Van Lines, Inc. acted intentionally, recklessly, or with malice.

(ECF No. 120 at PageID 2770–71.) Because the jury found Defendants acted intentionally, recklessly, or with malice, the Court immediately moved to the second phase of trial to address punitive damages. (See ECF No. 96 at PageID 2677–78.) The jury returned a verdict awarding Plaintiff $325,000 in punitive damages. (ECF No. 121 at PageID 2772.) The same day, the Court entered a judgment reflecting the two verdicts. (ECF No. 125.)

On July 11, 2025, Defendants filed the instant Motion. (ECF No. 137.) On July 25, 2025, Plaintiff filed his Response in Opposition. (ECF No. 138.)

## II.    LEGAL STANDARD

### A.    Judgment as a Matter of Law ("JMOL")

The Court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." See Fed. R. Civ. P. 50(a)(1); Mosby-Meachem v. Memphis Light, Gas & Water Div., 883 F.3d 595, 602 (6th Cir. 2018). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir. 2005), cert. denied, 546 U.S. 1003 (2005). The Court cannot substitute its own interpretation of the evidence for that of the jury, even if the Court would have reached a different conclusion.

6

See Static Control Components, Inc. v. Lexmark Int'l, Inc., 697 F.3d 387, 414 (6th Cir. 2012), aff'd, 572 U.S. 118 (2014).  This means the Court cannot "weigh the evidence, evaluate the credibility of the witnesses, or [otherwise] substitute [its] judgment for that of the jury."  Wehr v. Ryan's Family Steak Houses, Inc., 49 F.3d 1150, 1152 (6th Cir. 1995).

    **B.**    **New Trial**

"The [C]ourt may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  See Fed. R. Civ. P. 59(a)(1)(A).  "Generally, [the C]ourt may grant a new trial under Rule 59 [only] if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party."  See Conte v. Gen. Housewares Corp., 215 F.3d 628, 637 (6th Cir. 2000) (citing Holmes v. City of Massillon, 78 F.3d 1041, 1045–46 (6th Cir. 1996)).  If the moving party challenges the verdict as against the weight of the evidence, the Court "is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."  See Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 821 (6th Cir. 2000) (internal citation and quotation marks omitted).  "[I]f a reasonable juror could reach the challenged verdict, a new trial is improper."  Id. (citing Holmes, 215 F.3d at 1048.)  Therefore, "granting a new trial on this ground is a rare occurrence."  Innov. Ventures, LLC v. N2G Distrib., Inc., 763 F.3d 524, 534 (6th Cir. 2014) (internal citation omitted).

**III.**    **ANALYSIS**

Defendants move the Court for judgment as a matter of law, or in the alternative, for a new trial.  (ECF No. 137 at PageID 3924.)

The grounds for each are substantially the same. (See ECF No. 137-1 at PageID 3926–27.) Defendants argue (1) there was inadequate proof of causation for the defamation claim; (2) the statements at issue were Kraft's opinions; and (3) there was insufficient proof to support the award of punitive damages. (Id. at PageID 3930, 3937, 3938.)

A.   **Causation**[4]

Defendants argue there is inadequate proof of causation because (1) the members of RMW knew about the facts underlying the case—that is, the payments from RMW to Universal—before Kraft sent her texts; and (2) RMW decided to fire Plaintiff based on an independent investigation from Horne, not Kraft's texts. (See ECF No. 137-1 at PageID 3930–31.) Thus, Defendants argue they are entitled to JMOL or a new trial because Watson could not be defamed by Kraft's texts. (See id.)

Plaintiff counters that (1) "[a]lthough RMW knew about the payments, these payments were not considered theft until Kraft made her defamatory allegations that theft had occurred"; (2) RMW's "independent investigation" never concluded Plaintiff stole from RMW; and (3) RMW triggered the investigation and met to discuss firing Plaintiff shortly after Kraft sent the texts. (ECF No. 138 at PageID 3944–45.) Plaintiff argues these facts, paired with the fact that Plaintiff was terminated for theft, are enough for a reasonable jury to conclude Kraft's statements caused his termination from RMW. (See id. at PageID 3945.)

The Court considers the arguments on causation as grounds for both JMOL and a new trial.

---

[4] Defendants' briefing starts by arguing causation is required for a tort of defamation. (ECF No. 137-1 at PageID 3930.) In support, Defendants make the same points—complete with the same case citations—previously raised in their Motion for Summary Judgment. (See ECF No. 53-1 at PageID 226–227.) As the Court stated in its Order Denying Summary Judgment, "[i]t is unclear whether causation is required for a claim of defamation." (ECF No. 82 at PageID 2509.) The Court, however, does not need to decide this question, as the Parties admit the Court properly instructed the jury on causation in the context of defamation. (See ECF No. 137-1 at PageID 3930 (citing ECF No. 111 at PageID 2748, 2750, 2753, 2757); ECF No. 138 at PageID 3944).)

*i.* **JMOL**

The Court finds Defendants' arguments unavailing such that Defendants are not entitled to JMOL. While Defendants are correct that RMW knew about the payments which prompted Kraft's texts, Defendants miss the central point: Kraft stated that Plaintiff was stealing from the company via the payments. (See ECF No. 120 at PageID 2770–71.) Tom Watson, the RMW officer who fired Plaintiff, testified Plaintiff was fired for theft. (ECF No. 127 at PageID 2985:4–12.) This is a "legally sufficient evidentiary basis" for a reasonable jury to find in Plaintiff's favor on causation. See Mosby-Meachem, 883 F.3d at 602 (citing Fed. R. Civ. P. 50).

As in their Motion for Summary Judgment, Defendants argue RMW's "independent investigation" "breaks the causal connection between Ms. Kraft's statements and [Plaintiff's] firing." (ECF No. 137-1 at PageID 3933 (citing NOCO Co. v. OJ Com., LLC, 35 F.4th 475 (6th Cir. 2022)).) Defendants also argue Plaintiff's timeline argument is a "logical fallacy," as the "unequivocal, undisputed, unimpeached testimony of the decision-makers was that the firing was a result of the investigation, and not [Kraft's] texts." (Id. at PageID 3936 (citing Holt v. Camus, 128 F.Supp.2d 819, 821 (D. Md.), aff'd, 217 F.3d 839 (4th Cir. 2000)).)

The Horne investigation, however, does not break the causal chain. Horne's investigation never concluded Plaintiff stole or embezzled from RMW. (ECF No. 130 at PageID 3477:6–78:3.) Additionally, as in its Order Denying Summary Judgment, the Court again finds Defendants' citation to NOCO unavailing. (See ECF No. 82 at PageID 2510–11.) Unlike in NOCO, where the third party broke the causal chain by conducting an independent investigation in response to allegedly defamatory statements, here RMW did not conduct a similarly independent investigation before firing Plaintiff. (ECF No. 130 at PageID 3477:6–78:3; ECF No. 76 at PageID 2475); see 35 F.4th at 481. Furthermore, the NOCO panel decided proximate cause under Ohio law. See 35

9

F.4th at 481. In Tennessee, however, "proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991).

Furthermore, the Court finds Defendants' citation to Holt unavailing. See 128 F. Supp. 2d at 821. Plaintiff's timeline argument is not a "logical fallacy," (see ECF No. 137-1 at PageID 3936), as he is not relying on the "possibility [of] a negative inference" regarding his firing timeline. See id. Rather, Plaintiff presented evidence that (1) Horne did not reach any conclusion on theft in its investigation; (2) Plaintiff was fired for theft; and (3) Kraft accused Plaintiff of theft. (See ECF No. 130 at PageID 3477:6–78:3; ECF No. 127 at PageID 2985:4–12; ECF No. 120 at PageID 2770–71.)

Thus, a reasonable jury could infer RMW, without relying on the conclusions of an independent investigation by Horne, chose to terminate Plaintiff due to Kraft's texts. See Mosby-Meachem, 883 F.3d at 602 (citing Fed. R. Civ. P. 50).

    *ii.*    *New Trial*

For the same reasons given in the Court's denial of JMOL as to causation, the Court finds Defendants' arguments unavailing such that Defendants are not entitled to a new trial. See supra Section III.A.i. At trial, Plaintiff presented evidence which supported a finding that he was terminated due to Kraft's texts. (See ECF No. 127 at PageID 2985:4–12 (testimony that Plaintiff was fired for theft); ECF No. 130 at PageID 3477:6–78:3 (testimony that Horne's investigation never concluded Plaintiff stole from RMW).) Because the jury's conclusion is one that could reasonably have been reached, the Court will not set it aside simply because another conclusion is

10

possible. See Innov. Ventures, 763 F.3d at 534. Accordingly, the Court does not find the jury reached a "seriously erroneous result" such that a new trial is warranted. See id.

### B. Opinion

Defendants next argue Kraft's statements "necessarily must have been [her] opinions" because they "were founded only upon a review of RMW's financial records." (ECF No. 137-1 at PageID 3937.) In support, Defendants state the recipient of Kraft's statements, Todd Watson, understood them as opinions and did not accept them as true. (Id. at PageID 3938 (citing ECF No. 128 at PageID 3140–41, 3191–92; ECF No. 127 at PageID 2881–82).) Defendants argue, because Kraft's statements are unactionable opinions, they are entitled to a new trial. (Id.)

Plaintiff counters that Defendants' argument is an improper attempt at reweighing the evidence. (ECF No. 138 at PageID 3946.) Plaintiff argues the jury considered whether the statements were Kraft's opinion and reached a reasonable verdict. (Id.)

Because Defendants did not raise this issue when arguing for JMOL at the close of proof, (ECF No. 137-1 at PageID 3938 n.1), the Court only considers whether failure to grant a new trial on this basis would result in a "gross injustice." See Park W. Galleries, Inc. v. Hochman, 692 F.3d 539, 548 (6th Cir. 2012).

The Court finds no such "gross injustice." See Hochman, 692 F.3d at 548. The Court does not know if the jury considered Kraft's statements to be a non-opinion or an actionable opinion. (See ECF No. 120 at PageID 2770–71.) Even if Kraft's statements were considered her opinions, Plaintiff presented sufficient evidence that the statements "impl[ied] the allegation of undisclosed defamatory facts" such that they were actionable for defamation. See Satterfield v. Bluhm, No. E2003-01609-COA-R3-CV, 2004 WL 833291, at *5 (Tenn. Ct. App. Apr. 16, 2004). The evidence showed that shortly after RMW gave Kraft access to its financial records, Kraft texted

11

Todd Watson, "110[%] [Plaintiff] is stealing. I have zero doubt in that." (ECF No. 76 at PageID 2470.) Kraft also texted Todd Watson, "[RMW] has a kickback with [RMW-]CRS 1,000 percent happening." (Id.) A reasonable juror could find Kraft's statements implied undisclosed defamatory facts. See Joyce v. Thompson Wigdor & Gilly LLP, No. 06 CIV. 15315 RLC-gwg, 2008 WL 2329227, at *11 (S.D.N.Y. June 3, 2008) (finding a reasonable reader would assume an allegedly defamatory statement was rooted in fact where the speaker had direct knowledge of possible facts behind the statement); see also Milkovich v. Lorain J. Co., 497 U.S. 1, 18, (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth."). Accordingly, Defendants are not entitled to a new trial on the grounds that Kraft was stating an opinion. See Hochman, 692 F.3d at 548.

### C.     Punitive Damages

Defendants argue (1) they are entitled to JMOL, or alternatively a new trial, because Kraft's conduct did not rise to the level needed for punitive damages to apply; and (2) even if Defendants are liable for punitive damages, the amount was excessive such that they are entitled to a new trial. (ECF No. 137-1 at PageID 3939–40.) The Court addresses each in turn.

####         i.     Punitive Damages Liability

"[T]o recover punitive damages, a plaintiff must prove, by clear and convincing evidence, that the defendant acted (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." Coffey v. Fayette Tubular Prods., 929 S.W.2d 326, 328 (Tenn. 1996) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 900–01 (Tenn. 1992)). At trial, Plaintiff only contended Kraft acted recklessly in sending the texts. (See ECF No. 130 at PageID 3712:5–7; ECF No. 132 at PageID 3865:22–24.) "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation

from the standard of care that an ordinary person would exercise under all the circumstances." Hodges, 833 S.W.2d at 901.

Defendants first argue Kraft acted negligently, rather than recklessly, such that Defendants are not liable for punitive damages. (ECF No. 137-1 at PageID 3939.) Plaintiff argues Defendants again ask for the Court to improperly substitute its own interpretation of the evidence for that of the jury. (ECF No. 138 at PageID 3947 (citing Ward v. Shelby Cnty., No. 2:20-cv-02407-JPM-cgc, 2025 WL 1073770, at *3 (W.D. Tenn. Apr. 9, 2025) (McCalla, J.)).)

The Court finds Defendants' negligence argument unpersuasive. Plaintiff presented evidence that Kraft, without any formal financial education, acted recklessly by accusing Plaintiff of theft on incomplete information. (See ECF No. 128 at PageID 3115, 3137.) After a short review of RMW's financials, Kraft texted Todd Watson that Plaintiff was "syphoning money from RMW" and stating she had "zero doubt" that Plaintiff was stealing, "110[%]." (ECF No. 76 at PageID 2469–70.) The Court finds clear and convincing evidence by which a juror could reasonably conclude Kraft consciously disregarded a substantial risk to Plaintiff and is thus liable for punitive damages. See Hodges, 833 S.W.2d at 901. Accordingly, Defendants are not entitled to JMOL as to their liability for punitive damages. See Mosby-Meachem, 883 F.3d at 602. Furthermore, in context of the evidence given above, it is not "against the weight of the evidence" to find Defendants liable for punitive damages. See id. at 606–07. Accordingly, Defendants are not entitled to a new trial. See id.

Defendants next argue Kraft's conduct, even if it was reckless, was not "the most egregious of wrongs" or "truly reprehensible" such that Defendants are not liable for punitive damages. (See ECF No. 137-1 at PageID 3939 (citing Hodges, 833 S.W.2d at 901).) This argument is unavailing. While it is true punitive damages are "restrict[ed] . . . to cases involving only the most egregious

13

of wrongs," the Tennessee Supreme Court articulated "a court may . . . award punitive damages only if it finds a defendant has acted (1) intentionally, (2) fraudulently, (3) maliciously, *or (4) recklessly*." Hodges, 833 S.W.2d at 901 (emphasis added). How Defendants characterize Kraft's conduct is immaterial; if a jury found her conduct to be reckless, Defendants can be liable for punitive damages. See id.

        *ii.*        *Punitive Damages Amount*[5]

Defendants then argue, for the same reasons stated above, the jury reached a "seriously erroneous result" by awarding an excessive punitive damages award. (ECF No. 137-1 at PageID 3940); supra Section III.C.ii. Defendants, however, do not analyze any of the factors which the jury must consider in calculating punitive damages, see Hodges, 833 S.W.2d at 901–02, nor do they argue a due process violation. (Cf. ECF No. 137-1.) Plaintiff highlights this absence and argues Defendants do not identify any specifics in disputing the amount of punitive damages. (ECF No. 138 at PageID 3947.)

The Court finds Defendants' argument unavailing for the same reasons stated above—that is, Plaintiff presented clear and convincing evidence of Kraft's recklessness. (See ECF No. 128 at PageID 3115, 3137); supra Section III.C.i. Furthermore, Plaintiff presented evidence of Kraft's financial condition and Plaintiff's expenses in bringing the instant case, supporting his claim for punitive damages. (See ECF No. 132 at PageID 3853:6–9, 3854:13–24, 3857:20–58:25, 3861:6–30.) In context of the evidence put before the jury, the punitive damages amount is not excessive

---

[5] Hodges states a procedural where courts are required to "clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury is instructed." 833 S.W.2d at 902. The Court, however, does not need to follow this requirement, as it is not bound by state procedural rules. See Lindenberg v. Jackson Nat'l Life Ins. Co., No. 2:13-cv-02657-JPM-cgc, 2016 WL 3636278, at *3 (W.D. Tenn. Feb. 1, 2016) (McCalla, J.) (citing Medlin v. Clyde Sparks Wrecker Serv., Inc., 59 Fed. Appx. 770, 776 (6th Cir. 2003)).

such that Defendants are entitled to a new trial.  See Conte, 215 F.3d at 637; Hodges, 833 S.W.2d at 901–02.

Finally, although not addressed by Defendants, the Court finds no due process issue. Because the jury's award of punitive damages is less than the award of compensatory damages, it is "well within constitutional limits."  See Meyers Assocs., L.P. v. Goodman, No. 3:14-cv-1174, 2014 WL 5488761, at *17 (M.D. Tenn. Oct. 29, 2014) (citing McLemore ex rel. McLemore v. Elizabethton Med. Invs., Ltd. P'ship, 389 S.W.3d 764 (Tenn. Ct. App. 2012); BMW of N. Am. v. Gore, 517 U.S. 559, 581 (1996); Wilson v. Am. Sys., Inc., No. M2013-00690-COA-RMCV, 2014 WL 791936, at *6–7 (Tenn. Ct. App. Feb. 25, 2014)).

## IV.    CONCLUSION

For the above reasons, Defendants' Motion is **DENIED**.

**SO ORDERED**, this the 6th day of August, 2025.

                                         /s/ Jon P. McCalla
                                         JON P. McCALLA
                                         UNITED STATES DISTRICT COURT JUDGE